IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

IN THE MATTER OF                         :    CIVIL ACTION NO. 12-4845
   James Albert D'Angelo, Sr., and   :
   Carolyn Marie D'Angelo            :
                                     :
_____

DuBois, J.                                                                                             March 20, 2013

## **M E M O R A N D U M**

### I. INTRODUCTION

This is a bankruptcy appeal. Debtors James Albert D'Angelo, Senior, and Carolyn Marie D'Angelo (collectively, "debtors") appeal from a decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania granting in part J.P. Morgan Chase Bank, N.A.'s ("JPM") Motion to Dismiss, permissively abstaining from certain of debtors' claims, and denying the Motion of Debtors for a Preliminary Injunction. For the following reasons, the Court affirms the rulings of the Bankruptcy Court.

### II. BACKGROUND

The facts of the case have been previously set forth in the opinions of the Bankruptcy Court. See In re D'Angelo, Bankr. No. 11-14926-MDC, Adv. No. 11-00744-MDC, 2012 WL 27541 (Bankr. E.D. Pa. Jan. 5, 2012) (granting motion for fees and costs); In re D'Angelo, 475 B.R. 424 (Bankr. E.D. Pa. July 19, 2012) (dismissing amended complaint in part, abstaining in part, and denying motion for preliminary injunction). Further, this Court has previously recounted such facts in detail in its Memorandum dated August 7, 2012, and repeats those facts only as necessary to resolve the issues presently before the Court.

A.     Proceedings Leading to Appeal

This bankruptcy proceeding arises from a dispute regarding property previously owned by debtors in Doylestown, Pennsylvania, on which JPM sought to foreclose in state court. Debtors James D'Angelo, Senior ("Mr. D'Angelo") and Carolyn D'Angelo ("Mrs. D'Angelo") previously owned real estate located at 102 Pickwick Drive in Doylestown, Pennsylvania ("Doylestown property"). In re D'Angelo, 2012 WL 27541, at *1. A mortgage on the Doylestown property, dated August 11, 2005, secured a note of $1,462,500. Id. Through a series of assignments, JPM became the mortgage holder and, on July 3, 2006, filed a foreclosure action in the Court of Common Pleas of Bucks County ("Court of Common Pleas" or the "state court"), J.P. Morgan Chase Bank National Association v. D'Angelo et al., Civil Action No. 2006-6047 ("Foreclosure action"). Id.

Debtors opposed the foreclosure proceedings, asserting that the mortgage and note were invalid because they were forged. Id. Specifically, according to debtors, James D'Angelo, Junior—Mr. D'Angelo's son, hereinafter "D'Angelo Junior"—obtained a mortgage for $1.5 million with the help of an unscrupulous mortgage lending agent who was later indicted for mortgage fraud. D'Angelo Junior allegedly forged Mr. D'Angelo's name and arranged for a friend to forge Mrs. D'Angelo's name. D'Angelo Junior, according to debtors, then "traded" the $1.5 million mortgage for a second mortgage of $1.88 million. JPM sought to foreclose on the second mortgage. Debtors sought a declaratory judgment in the Court of Common Pleas, asking that court to hold that the mortgage was "invalid, void, or otherwise unenforceable" due to D'Angelo Junior's forgery. Id. The declaratory judgment case, D'Angelo et al. v. JP Morgan Chase Bank, N.A., et al., Civ. Action No. 2007–00041–26–1, was consolidated with the foreclosure action in Civil Action Number 2006-6047 in the Court of Common Pleas.

On April 11, 2011, the Court of Common Pleas granted partial summary judgment to JPM and imposed an equitable lien of $1,339,387.30 against the Doylestown property ("equitable lien").[1] The Court of Common Pleas ordered debtors to "confirm" the equitable lien within ten days "by executing an amended and restated note and mortgage effective [August 11, 2005] on the same terms and conditions as the August 11, 2005 Note and Mortgage assigned to" JPM. Docket Entries, J.P. Morgan Chase Bank Nat'l Ass'n v. D'Angelo et al., Civ. No. 2006-6047 (Bucks Cnty. Ct. Com. Pl.) (hereinafter "CCP Docket Entries"). Debtors failed to do so, and, on June 22, 2011, JPM filed a motion in the Court of Common Pleas seeking to hold debtors in contempt for their noncompliance. (CCP Docket Entries.)

That same day, Debtors filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania. In re D'Angelo, 2012 WL 27541, at *1. That proceeding was later converted to Chapter 11, with the debtors asserting the rights of a Bankruptcy Trustee as "debtors-in-possession."[2] Id. at *1 n.1. The filing of the bankruptcy petition automatically stayed enforcement of the equitable lien. See 11 U.S.C. § 362(a). According to the Bankruptcy Court, debtors' counsel "has freely admitted that the [d]ebtors filed for bankruptcy in order to avoid the adjudication of their claims against J.P. Morgan by the Bucks County Court." In re D'Angelo, 475 B.R. at 441.

JPM responded by filing a Motion for Relief from Stay in the Bankruptcy Court on July 7, 2011, seeking permission to enforce the equitable lien. In re D'Angelo, 2012 WL 27541, at *1. The Bankruptcy Court held an evidentiary hearing on the Motion for Relief from Stay on

---

[1] The equitable lien was awarded because, inter alia, debtors' prior mortgage was satisfied when D'Angelo Junior obtained the allegedly fraudulent mortgage. See In re D'Angelo, 475 B.R. at 436. Debtors acknowledge that the prior mortgage was valid and enforceable. Id. The equitable lien amount thus includes the satisfaction amount of $1 million on the original mortgage plus interest and taxes paid by JPM prior to the imposition of the equitable lien. Id.

[2] "The term 'debtor in possession' refers to a debtor in a chapter 11 case for which no trustee has been appointed. . . . When no trustee is appointed, the Bankruptcy Code gives a debtor in possession the powers and duties of a trustee." In re Cybergenics Corp., 226 F.3d 237, 243 (3d Cir. 2000) (internal citations omitted).

3

August 4, 2011, and, at the conclusion of the hearing, granted JPM relief from the automatic stay to seek enforcement of the equitable lien in the Court of Common Pleas.

After the Bankruptcy Court lifted the automatic stay, the Court of Common Pleas held a hearing on October 31, 2011, at which debtors were ordered to execute an amended mortgage and note to comply with that court's April 11, 2011, order. In re D'Angelo, 475 B.R. at 435. At a hearing on January 12, 2012, the Court of Common Pleas "determined that the [d]ebtors had not complied with its Lien Order and found the [d]ebtors to be in willful contempt of that order." Id. That court "awarded J.P. Morgan $4,000.00 in fees and costs plus a $100 penalty for each day after January 12, 2012, that the [d]ebtors failed to comply with the Lien Order." Id. A sheriff's sale of the Doylestown property was scheduled for June 8, 2012. Id.[3]

On April 9, 2012, debtors filed an Amended Complaint in Bankruptcy Court, in which they sought to invalidate JPM's interests in the Doylestown property and to avoid the equitable lien, pursuant to 11 U.S.C. §§ 544(a)[4] and (b).[5] Id. at 430. This filing, along with others, began the instant Adversary Case Number 12-301. On April 15, 2012, debtors filed a Motion for

---

[3] The parties have also submitted briefs related to the ongoing state court proceedings, specifically, the recent appeal to the Pennsylvania Supreme Court. The Court does not consider such briefs as they are irrelevant to the determination of the instant appeal.

[4] 11 U.S.C. § 544(a) states:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

[5] 11 U.S.C. § 544(b) states:
(b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

4

Preliminary Injunction, asking the Bankruptcy Court to enjoin the sheriff's sale scheduled for June 8, 2012. Id. at 429.

The Bankruptcy Court held an evidentiary hearing to address the Motion for Preliminary Injunction on May 8, 2012, and took the matter under advisement. Id. Before the Bankruptcy Court could rule, on May 31, 2012, the Court of Common Pleas granted debtors a stay of the sheriff's sale until September 14, 2012. Id. at 428. The Bankruptcy Court held a hearing on June 5, 2012, to address JPM's Motion to Dismiss Adversary Case Number 12-301. At the conclusion of the hearing, the Bankruptcy Court ruled from the bench, granting in part JPM's Motion to Dismiss and denying Debtors' Motion for a Preliminary Injunction. Id. at 429. On July 19, 2012, the Bankruptcy Court issued a Memorandum amplifying the reasons for its oral rulings. See id. Noting that it was "concerned that [the] adversary proceeding constitute[d] continued and unrepentant gamesmanship by the [d]ebtors," the Bankruptcy Court held, inter alia, that it would invoke the permissive abstention doctrine and decline to rule on debtors' claims regarding the validity of the mortgage. Id. at 441. It also held, inter alia, that it could not invalidate the equitable lien under the Rooker-Feldman doctrine because the state court had decided debtors' claims regarding the equitable lien and debtors were merely seeking to relitigate those claims in the Bankruptcy Court. Id. at 442-43.

The following day debtors filed a Motion for Injunction Pending Appeal, requesting that the Bankruptcy Court stay the sheriff's sale of the house scheduled for September 14, 2012. On August 15, 2012, the Bankruptcy Court conditionally granted debtors' motion, stating that the injunction would remain in effect only if debtors remitted $10,100 per month to JPM, constituting payments toward the satisfaction of the equitable lien, post-petition real estate and

5

school taxes, and homeowner's insurance premiums. (Bankruptcy Court Order dated August 15, 2012, at 1.)

On August 22, 2012 debtors appealed to this Court the Bankruptcy Court's order dismissing the Amended Complaint in part. However, before this Court could decide the appeal, on August 25, 2012 debtors moved for an injunction of the pending sheriff's sale without the prerequisite of a monthly payment to JPM. Debtors argued that the monthly payment requirement was both beyond their financial capacity and unfair. In its Order dated August 28, 2012, this Court denied debtors' motion, concluding, inter alia, that debtors had not demonstrated a likelihood of success on the merits of the instant appeal.

Debtors failed to satisfy the conditions of the conditional stay. Thereafter, on September 13, 2012, the Pennsylvania Superior Court denied debtors' emergency request for a stay of the sheriff's sale. (Joint Status Report, at 1.) As a result, the sale of the house took place the following day. (Id.) No bids were received at the sale and JPM acquired the property for the costs it incurred in executing on the equitable lien at the sheriff's sale, $1,348.40. (Id. at 2.) The parties agreed that as a result of the sale, the "appeal of the Bankruptcy Court's denial of injunctive relief has been rendered moot by the occurrence of the [s]heriff's sale of the [p]roperty." (Id.)

### III.   JURISDICTION

"The federal courts are under an independent obligation to examine their own jurisdiction . . . ." United States v. Hays, 515 U.S. 737, 742 (1995). "Without jurisdiction the court cannot proceed at all in any cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998). Before proceeding to the merits of the instant appeal, the Court must resolve two jurisdictional issues. First, the Court must decide whether the appeal is moot due to the sheriff's

6

sale of the house. Second, the Court must determine if it has jurisdiction over a Bankruptcy Court order which includes permissive abstention.

A. Mootness

"The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." DeFunis v. Odegaard, 416 U.S. 312, 316 (1974). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party . . . As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Knox v. Serv. Employees Int'l Union, Local 1000, 132 S. Ct. 2277, 2287 (2012); see also New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1496 (3d Cir. 1996) (holding that court must determine whether "there is still the possibility of granting any effective relief" before finding an appeal moot).

JPM argues that the appeal was mooted by the sheriff's sale because the sale of the house is final, and the equitable lien was extinguished by the sale. The Court disagrees. If a transfer is avoided pursuant to a § 544 action, § 550 provides that the "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ." See also Wells Fargo Home Mortgage, Inc. v. Lindquist, 592 F.3d 838, 846 (8th Cir. 2010). In this case, debtors (asserting the rights of Trustees as "debtors-in-possession") have made several claims to avoid the mortgage and equitable lien pursuant to § 544. Thus, as JPM, a party to this litigation, acquired the house at the foreclosure sale, the Court concludes that, pursuant to § 550 the case is not moot because, "there remains the possibility that the [debtors]

can recover" the property or value of the property at issue, "if the [debtors] prevail on appeal." In re Trierweiler, No. 11-111, 2012 WL 6725589, at *1 n.15 (B.A.P. 10th Cir. Dec. 28, 2012).

B.  Final Order

In its decision, the Bankruptcy Court abstained on certain of debtors' claims. JPM argues that because the Bankruptcy Court abstained from deciding whether the mortgage could be avoided, the Bankruptcy Court order is not final for the purposes of appeal. Under 28 U.S.C. § 158(a)(1) district courts have jurisdiction over appeals "from final judgments, orders, and decrees" of Bankruptcy Courts. JPM argues that while interlocutory appeals are allowed, they require leave of court under § 158(a)(3). Thus, JPM claims that because debtors failed to seek or receive leave of court to file an interlocutory appeal, the instant appeal is improper.

The Court rejects JPM's argument. "The decision to permissively abstain [by a Bankruptcy Court] . . .[is a] final order[] reviewable by the district court." In re BWP Gas, LLC, 354 B.R. 701, 705 (E.D. Pa. 2006); see also In re Federal–Mogul Global, Inc. 300 F.3d 368, 388–89 (3d Cir. 2002) (noting legislative discussion stating that bankruptcy court decisions to abstain are final orders reviewable by the district court). This Court therefore has jurisdiction over the appeal of the Bankruptcy Court's order.

## IV. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that "'raise a right to relief above the speculative level.'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir.2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

A district court reviews a Bankruptcy Court's "legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof." In re Makris, 482 F. App'x 695, 698 (3d Cir. 2012). "[W]hether the [bankruptcy] court erred in exercising its authority to permissively abstain is reviewed for abuse of discretion." In re BWP Gas, LLC, 354 B.R. at 705.

V.  DISCUSSION

   A.  Background

In their Amended Complaint, debtors seek to invalidate JPM's interest in the house pursuant to 11 U.S.C. §§ 544(a)(1)-(3) and (b). The Bankruptcy Court found the Amended Complaint to be "poorly pled" because it fails to specify the precise relief sought by debtors under each statutory provision. In re D'Angelo, 475 B.R. at 437. The Amended Complaint, inter alia, requests that the court "declare the mortgage and any other claims or rights claimed by J.P. Morgan under the mortgage against the Plaintiffs, including any 'equitable liens' invalid . . . . " (Am. Compl. at 4.)

The Bankruptcy Court addressed the following claims in the Amended Complaint: (1) avoidance of the equitable lien pursuant to § 544(a), (2) avoidance of the equitable lien pursuant to § 544(b), (3) avoidance of the mortgage pursuant to § 544(a) and (b), and (4) a general claim to "invalidate" the equitable lien on the basis of infirmities in the mortgage. The Court addresses the Bankruptcy Court's rulings on each request for relief in turn.

   B.  Avoidance of Equitable Lien Under § 544(a)

Pursuant to 11 U.S.C. § 544(a)(1)-(3), "federal law confers on the debtor-in-possession the ability to avoid any transfer of property that is voidable by a hypothetical judicial lien creditor, a hypothetical execution creditor, or a hypothetical bona fide purchaser of real

9

property." Dunes Hotel Associates v. Hyatt Corp., 245 B.R. 492, 500 (D.S.C. 2000). Accordingly, "[u]nder 11 U.S.C. § 544(a), unperfected security interests are avoidable and can be relegated to the status of general unsecured claims." In re First T.D. & Inv., Inc., 253 F.3d 520, 525 (9th Cir. 2001); see also In re Roser, 613 F.3d 1240, 1243 (10th Cir. 2010) (noting that "In general, the trustee can avoid liens that are unperfected when the petition for bankruptcy is filed"); In re McLaughlin, 2006 WL 3796421, at *4 (D.N.J. Dec. 20, 2006) (finding that § 544(a) "gives the Trustee the power to defeat any unperfected security interests as of the date of the filing") (quoting Batt v. Scully, 168 B.R. 541, 545 (D.N.J.1994)). Thus, to maintain an action under § 544(a), a Trustee is required to set forth sufficient facts that, if true, would establish the unperfected status of the lien sought to be avoided.

The Bankruptcy Court concluded that debtors have not stated a claim to avoid the equitable lien under § 544(a). That court first ruled that the Amended Complaint did not constitute well-pled allegations because it "lump[ed] three separate claims into one count . . . ." In re D'Angelo, 475 B.R. at 437. The Bankruptcy Court then stated that even if the Amended Complaint was properly pled, it "contains no factual allegation that the Equitable Lien was unperfected as of the Petition Date. Rather, debtors simply allege that the 'equitable lien' arises only as a result of the presence of an allegedly-valid mortgage, and cannot stand if its underlying supportive mortgage cannot stand." Id. at 437. Because the Amended Complaint failed to set forth any facts in support of the allegation that the equitable lien was unperfected, the Bankruptcy court held the Amended Complaint was facially insufficient as to this claim.

Debtors contend that because the mortgage was defective it should have been invalidated and "the entry of an order by the [state court] granting an equitable lien could similarly not validate an equitable lien entered in violation of applicable state law." (Debtors' Brief, at 22.)

Debtors, in effect, argue that alleging the invalid status of the mortgage is tantamount to an allegation that the lien was unperfected when it was entered. They further state, "Pennsylvania law does not validate an equitable lien in favor of the Defendant, as the holder of a claim based on forgery and fraud, and thus the Plaintiffs' attack on the Defendant's equitable lien under Section 544 should have prevailed . . . . " (Id. at 19.)

This Court concludes that debtors have failed to state a claim to avoid the equitable lien pursuant to § 544(a). The equitable lien was issued on April 11, 2011 by the Bucks County Court of Common Pleas and was recorded in the judgment index, and thus perfected, on April 12, 2011. See 42 Pa.C.S.A. § 4303(a); In re Nelson Co., 959 F.2d 1260, 1264–65 (3d Cir.1992) (holding that judicial lien was perfected by entry and indexing of judgment). Debtors did not file for bankruptcy until June 22, 2011. Although debtors claim that the equitable lien was essentially unperfected as of the petition date due to defects in the allegedly fraudulent mortgage, this Court agrees that "[t]he Equitable Lien is a separate lien that was issued as a result of a J.P. Morgan's request for partial summary judgment on its unjust enrichment claim resulting from satisfaction of the prior mortgage and payment of taxes and insurance." In re D'Angelo, 475 B.R. at 437. Further, apart from mere conclusory statements, "[d]ebtors have not alleged any set of facts or identified any applicable law from which this Court may infer that the Equitable Lien is dependent upon the Mortgage." Id. at 437-38. Further, even if the lien was somehow dependent on the mortgage, debtors cite no authority for the proposition that a judicially-entered lien may be unperfected, and thus avoidable under § 544(a), because of defects in the underlying mortgage. The Court therefore affirms the Bankruptcy Court's dismissal of that part of the Amended Complaint seeking to avoid the equitable lien under § 544(a).

C.      Avoidance of Equitable Lien Under § 544(b)

Pursuant to § 544(b), "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 . . . . " "The avoidance power provided in section 544(b) is distinct from others because a trustee or debtor in possession can use this power only if there is an unsecured creditor of the debtor that actually has the requisite nonbankruptcy cause of action." In re Cybergenics Corp., 226 F.3d 237, 243 (3d Cir. 2000). As such, to maintain an action under § 544(b) a Trustee or debtor-in-possession is required to allege the existence of such an unsecured creditor. See e.g., In re DBSI, Inc., 2011 WL 607442, at *6 (Bankr. D. Del. Feb. 11, 2011)

The Bankruptcy Court found that the Amended Complaint did not aver the existence of any unsecured creditors, and as a result the court held the Amended Complaint failed to state a valid § 544(b) claim as to the equitable lien.

Debtors argue that unsecured creditors were identified in the Bankruptcy Schedules which were made part of the record at the Bankruptcy Court hearing on May 8, 2012. Debtors thus appear to claim that because such creditors were made a part of the record in the Bankruptcy Court, they have been sufficiently identified and the Amended Complaint should not be dismissed for failure to identify unsecured creditors.

"When analyzing the sufficiency of a complaint for purposes of Rule 12(b)(6), courts do not generally require a trustee to plead the existence of an unsecured creditor by name, although the trustee must ultimately prove such a creditor exists . . . A complaint, however, must set forth sufficient information to outline the elements of [the] claim or to permit inferences to be drawn that these elements exist." In re APF CO., 274 B.R. 634, 639-40 (Bankr. D. Del. 2001). Thus,

12

where debtors fail to allege in the complaint the existence of an unsecured creditor, courts will dismiss claims under § 544(b). See In re DBSI, Inc., 2011 WL 607442 (Bankr. D. Del. Feb. 11, 2011).

In their Amended Complaint debtors have failed to allege the existence of an unsecured creditor who could avoid the transfers at issue. Debtors set forth no law establishing that Bankruptcy Schedules in a court record may satisfy the above pleading requirements. The Court therefore affirms the dismissal of that part of the Amended Complaint seeking to avoid the equitable lien under § 544(b).

D. Avoidance of Mortgage Under §§ 544(a)-(b)

Debtors argued before the Bankruptcy Court that the mortgage may be avoided (or "invalidated") because it contains forged signatures and was not properly notarized or recorded. However, the Bankruptcy Court noted that debtors' claims to avoid the mortgage necessarily involved a determination as to the validity of the mortgage, the subject of ongoing state court proceedings. As a result, pursuant to 18 U.S.C. § 1334(c)(1),[6] the Bankruptcy Court permissively abstained from deciding any of debtors' claims regarding the mortgage. In re D'Angelo, 475 B.R. at 441-42.

Debtors make two primary arguments regarding the Bankruptcy Court's abstention. First, debtors claim that the Bankruptcy Court dismissed the Amended Complaint, and thus there is no further issue from which to abstain. Second, debtors assert that this adversary proceeding is based on § 544 of the bankruptcy code and must be heard and decided by the Bankruptcy Court, because there is no alternative forum to which to defer.

---

[6] 18 U.S.C. § 1334(c)(1) states: "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

13

This Court rejects debtors' arguments. It concludes that the Bankruptcy Court dismissed only part of the Amended Complaint, that pertaining to the avoidance of the equitable lien. (See Bankruptcy Court Order dated July 19, 2012.) Thus it was necessary to separately address debtors' claim to avoid the mortgage pursuant to §§ 544(a)-(b).

Next, debtors are incorrect in arguing that a Bankruptcy Court may not abstain from an adversary proceeding involving a claim under § 544. See In re Weldon F. Stump & Co., 373 B.R. 823, 827 (Bankr. N.D. Ohio 2007) (permissively abstaining from § 544 action and noting that the "issue of discretionary abstention can, by definition, only arise when there already exists a valid basis for jurisdiction"); see also In re Petrie Retail, Inc., 304 F.3d 223, 232 (2d Cir. 2002) ("Permissive abstention from core proceedings under 28 U.S.C. § 1334(c)(1) is left to the Bankruptcy Court's discretion."). Further, it is correct that "[c]ourts generally should not abstain from hearing a case or controversy where the plaintiff has no other forum in which to seek relief." In re Finova Capital Corp., 358 B.R. 113, 117 (Bankr. D. Del. 2006). That is not an obstacle in this case. The Bankruptcy Court noted that in deciding whether the mortgage may be avoided pursuant to § 544, it would necessarily determine the validity of the mortgage under state law. That "precise issue . . . the validity of the Mortgage – is presently the subject of the State Court Proceedings . . . ." In re D'Angelo, 475 B.R. at 441.

This Court concludes that the Bankruptcy Court did not abuse its discretion in permissively abstaining from deciding debtors' § 544 claims as applied to the mortgage. Courts in this circuit have variously employed a seven-factor and a twelve-factor test to determine whether permissive abstention pursuant to 28 U.S.C. § 1334(c)(1) is appropriate. Compare Jazz Photo Corp. v. Dreier LLP, 2005 WL 3542468, at *7 (D.N.J. December 23, 2005) (using seven-factor test) with Bricker v. Martin, 348 B.R. 28, 34 (W.D.Pa. 2006) (using twelve-factor test).

The factors in each set are "substantially similar," and for either set used, "[c]ourts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." Shalom Torah Centers v. Philadelphia Indem. Ins. Companies, Civ. 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011). Further, "not all the factors necessarily need to be considered." Monmouth Investor, LLC v. Saker, 2010 WL 143687, at *4 (D.N.J. Jan. 12, 2010).

In this case, the Bankruptcy Court utilized the twelve-factor test: (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-Bankruptcy Court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the Bankruptcy Court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in Bankruptcy Court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties. In re D'Angelo, 475 B.R. at 441-42.

The Court agrees with the Bankruptcy Court that the "relief sought by the [d]ebtors has a great potential to conflict with and/or render a nullity" orders in the state proceedings. Id. at 441. As "comity is a significant consideration in permissive abstention," the Court finds that the presence of a related state proceeding weighs in favor of permissive abstention. See In re Kessler, 430 B.R. 155, 167 (Bankr. M.D. Pa. 2010).

Additionally, the Bankruptcy Court noted that "[d]ebtors' counsel . . . has freely admitted that the [d]ebtors filed for bankruptcy in order to avoid the adjudication of their claims against J.P. Morgan by the Bucks County Court." In re D'Angelo, 475 B.R. at 441. Such admissions constitute a showing that debtors are "in fact, seeking a better result by shopping around . . . ." In re Valley Media, Inc., 289 B.R. 27, 32 (Bankr. D. Del. 2003). The Court therefore agrees that the debtors' forum-shopping in this case also weighs in favor of permissive abstention.

Finally, the Court concurs with the Bankruptcy Court that the waste of judicial resources and estate assets resulting from simultaneous state-federal litigation also support permissive abstention in this case. In re D'Angelo, 475 B.R. at 441-42. Thus, having considered the relevant factors, the Bankruptcy Court properly exercised its discretion to abstain from deciding debtors' claims relating to the mortgage. The debtors may litigate the state court proceedings regarding the mortgage to conclusion, and then, if they wish, return to Bankruptcy Court to assert their avoidance claims.

E. "Invalidation" of the Equitable Lien

This Court has already concluded that the Bankruptcy Court properly dismissed that part of the Amended Complaint which averred that the equitable lien should be avoided under §§ 544 (a) and (b). Separate and apart from those issues, the Bankruptcy Court addressed debtors' general claim that the equitable lien should be invalidated on the basis of infirmities in the mortgage. The court held that even if debtors were correct that the equitable lien was somehow dependent on the mortgage, the court was nevertheless precluded from invalidating the lien. The Bankruptcy Court first noted that the Rooker-Feldman doctrine bars a "losing party in a previous state court action from seeking appellate review of the state-court judgment, a task entrusted by statute solely to the Supreme Court." In re D'Angelo, 475 B.R. at 442. The court held that it

16

lacked subject matter jurisdiction to invalidate the equitable lien because, "[a]ny ruling addressing this issue of whether the Equitable Lien is unenforceable due to the Mortgage's infirmities would necessarily have the effect of negating the Lien Order." Id.

Next, the Bankruptcy Court held that even if Rooker-Feldman did not apply, res judicata barred consideration of debtors' claim regarding the invalidity of the equitable lien. The Bankruptcy Court concluded that because the parties fully litigated the issue of the lien below and thus could have raised claims of forgery and other infirmities, issue preclusion barred the court from disturbing the equitable lien.

Debtors claim that the Rooker-Feldman doctrine, which bars lower federal courts from overturning decisions of state courts, cannot possibly apply in the context of a § 544 action, because bankruptcy actions are "expressly intended to avoid and hence attack and invalidate otherwise valid state court orders." (Debtors' Brief, at 27.) In support, debtors cite to a footnote in a Third Circuit case for the proposition that "[i]n apparent contradiction to Rooker-Feldman theory, Bankruptcy Courts are empowered to avoid state judgments . . . to modify them . . . and to discharge them . . . ." In re Knapper, 407 F.3d 573, 583 n. 22 (3d Cir. 2005).

While Knapper noted the fact that bankruptcy courts have certain specified authority to avoid or modify state court judgments, the Third Circuit later held that the Rooker-Feldman doctrine "applies equally to federal Bankruptcy Courts." In re Madera, 586 F.3d 228, 232 (3d Cir. 2009). A Bankruptcy Court is thus barred in certain circumstances from taking "an action that would negate the state court's judgment." Id. at 233. In this case, the Bankruptcy Court correctly noted that invalidating the equitable lien, a power not expressly provided under the cited provisions of the Bankruptcy Code, would necessarily negate the state court's lien order and Rooker-Feldman thus barred such a determination. The Bankruptcy Court properly

17

concluded that it was barred by the Rooker-Feldman doctrine from disturbing the state court judgment. Given this conclusion the Court need not address the question whether res judicata also precludes such a holding.

      F.      Remainder of Debtors' Issues on Appeal

Debtors identify three additional issues on appeal: (1) whether "the fact that the underlying documents giving the Defendant rights against Plaintiffs were forged in some way protect the Defendant's rights from attack under 11 U.S.C. § 544 or otherwise," (2) whether "it [is] necessary or appropriate to join any party other than the creditor-mortgagor asserting rights against the Appellants as a defendant in a Section 544 action," (3) and whether it is "necessary for debtors-in-possession who are asserting rights under Section 544 in their capacity as co-trustees to satisfy the prerequisites of 11 U.S.C. § 522(h) and (g)(1)." (Debtors' Brief, at 2-3.) These issues do not address any ruling of the Bankruptcy Court involved in this appeal, and the Court declines to address them.[7] See also Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir.1993).

## VI.    CONCLUSION

For the foregoing reasons, the Court will affirm the Bankruptcy Court's Order of July 19, 2012. An appropriate order follows.

---

[7] Additionally, the Court does not address arguments pertaining to the denial of injunctive relief, as the parties agree that the issue has been rendered moot.